STANTON, et ux., Appellants, v. MERCHANTS' LOAN &

TRUST COMPANY et al, Respondents.

(168 N. W. 746).

(File No. 4327.     Opinion filed Sept. 3, 1918.     Rehearing denied
November 4, 1918).

1.  **Cancellation of Investments—Land Exchange, Broker's Com-
    mission, Recovery Back—False Representations re Value, In-
    dependent Investigation Re—Evidence, Sufficiency.**

    · Where plaintiffs, who had employed defendant to assist in
    making an exchange of their lands for other lands, he to have a
    percentage commission on basis of value, sought to recover
    from defendant part of the amount paid him, and to have can-
    celled their note and mortgage for the balance, on the ground
    of false representations made to them by defendant as to the
    lands to be exchanged; held, that the evidence fails to show
    such misconduct on defendant's part as to sustain recovery; the
    evidence showing that prior to entering into the contract one of
    plaintiffs personally examined the land to be exchanged to them,
    and was at liberty to make inquiries relative to character and
    value thereof, trial court having properly found that plaintiff
    made independent inquiries and satisfied himself from other
    sources than defendant, concerning same.

2.  **Real Property—Land Exchange—Recovery Back of Broker's
    Commission—Mutually Inflated Values, Conflicting Evidence,
    Sustained Findings.**

    Where, in a transaction of exchange of plaintiff's lands,
    through a broker, for other lands, the evidence sustained trial
    court's findings that each party had placed substantially equal
    excess values on the land for the purpose of the exchange, held,
    that, the findings being based upon conflicting testimony, and,
    not being contrary to clear prepondance thereof, they will not
    be disturbed on appeal.

3.  **Evidence—Broker's Procurement of Land Exchange—Recovery
    of Paid Commission—Defendant's Suppressive Statement to
    Third Person Re Land Value, Competency, Independent In-
    vestigation as Affecting.**

    Where, in a suit to recover commissions paid a broker for
    effecting an exchange of plaintiffs' lands for other lands, on the
    ground that defendant falsely overestimated values of lands to
    be exchanged, held, that defendant's statements to a third person,
    who had stated that a certain tract to be exchanged to plain-
    tiffs was not worth a named sum per acre, that he (defendant)
    would dislike to have anything said to plaintiff to the effect
    that said land was not worth said sum, was non-prejudicial to
    plaintiffs as showing defendant's bad faith, the evidence show-

ing that plaintiffs made an independent investigation as to character and value of said lands, and relied upon thier own judgment concerning same.

4.    **Damages—Measure Of—Broker's Unconscionable Commission re Land Exchange—Acceptance of Exchange, Effect, re Commission—Estoppel.**

Where plaintiffs, an exchange of whose land for other lands had been effected by defendant under an agreement to pay him an unconscionable commission, sought to recover the commission after accepting the benefit of the exchange, **held**, plaintiffs will not be heard to complain that the commission was unconscionable.

Whiting, P. J., dissenting.

Appeal from Circuit Court, Sanborn County. HON. FRANK B. SMITH, Judge.

Action by Frank Stanton and another, against The Merchants' Loan & Trust Company, and George H. Randall, to secure surrender of a promissory note and cancellation of a mortgage securing payment of same, and for recovery of money. From a judgment for defendants, and from an order denying a new trial, plaintiffs appeal. Affirmed.

*Null & Royhl,* for Appellants.

*Williams & Sweet,* and *Spangler & Haney,* for Respondents.

(1) To point one of the opinion, Appellants cited:

Houck vs. Brownell, 120 Ill. 161.

POLLEY, J. This action was brought by plaintiffs to secure the surrender of a promissory note for $5,000 and the cancellation of a mortgage given to secure payment of the same and for the recovery of $7,480 of plaintiffs' money, which came into the hands of defendant Randall, and which plaintiffs claim has not been properly accounted for. The case was tried to the court without a jury. Findings of fact and judgment were for defendants, and plaintiffs appeals.

The controversy grew out of an exchange of a tract of 3,520 acres of land owned by plaintiffs in Custer county for land owned by one De Witt, situated in Sanborn and Miner counties. About the 1st of January, 1914, plaintiffs employed the defendant Randall to assist them in making a sale of their said land or an exchange thereof for other land. The value placed on plaintiffs' land was $63,360, and upon this basis Randall was to have a

commission of $3 per acre for making a sale or exchange. Pursuant to such employment, Randall entered into negotiations with the said De Witt for the exchange of plaintiffs' Custer county land for De Witt's land in Sanborn and Miner counties. The De Witt land consisted of one quarter section valued at $125 per acre, a half section valued at $75 per acre, and a quarter section valued at $70 per acre, aggregating in all the sum of $55,200. On the 6th day of January, 1914, plaintiffs and the said De Witt entered into a contract in writing for the exchange of said lands on the basis of above valuations, and within the 60 days following said date, the terms of said contract were fully carried out by the exchange of deeds by plaintiffs and the said De Witt. Upon the basis of the above valuations, defendant Randall's commission amounted to $10,560. Plaintiffs paid this sum by giving him $5,560 in cash and by giving him a note for $5,000 secured by a mortgage on a quarter section of the De Witt land. This note and mortgage were executed and delivered on or about the 22d day of May, 1914. Plaintiffs now claim that, at the time of the making of the said exchange, they relied wholly upon defendant Randall for information relative to the value of the De Witt lands, and that the value placed thereon by said defendant was greatly in excess of its actual value, and in excess of what said defendant knew to be its value, and that, because of such excessive value placed thereon by defendant, they paid a great deal more for said land than it was worth—in other words, that said Randall did not act in good faith with plaintiffs, but concealed certain facts relating to the value of said land, and, for that reason, he was not entitled to any commission or other compensation for his said services.

[1, 2] After a careful examination of the record, we are of the opinion that the plaintiffs have failed to show such misconduct on the part of said defendant as entitles them to recover the commissions they had paid to Randall. The undisputed evidence shows that, before entering into the contract of exchange, one of the plaintiffs went from his home in Custer county and, in company with the said Randall, personally examined the said Sanborn and Miner county lands, and that, while in these counties, he was at liberty to make such inquiry relative to the character and value of said land as he saw fit, and there is evidence tending to prove,

and the court found as a fact, that said plaintiff did make independent inquiries and satisfied himself, from sources other than the said Randall, of the character and value of said land. It is clear from the evidence that, for the purposes of this trade, both plaintiffs and said De Witt greatly inflated the value of their respective holdings. Upon this point the trial court made the following findings of fact:

"That the values put upon the plaintiffs' lands and the De Witt lands in the aforesaid written contract were about equal in excess of the actual cash values of the same; that said values were not understood or intended by the parties to represent the actual cash value of said lands at the time of the execution of said contract, and were merely estimates for the purpose of the trade or exchange; that the plaintiff Frank Stanton, who acted also for and on behalf of his wife, the plaintiff Anna Stanton, before entering into said contract personally and independently of the defendant Randall, investigated the De Witt lands, was at liberty to and did make independent inquiries in relation to the value thereof; that defendant Randall did not deceive or attempt to deceive said plaintiffs by any representation as to the value of the same; that said plaintiff relied on his own judgment, as well as on defendant Randall's judgment, as to the advantage of the trade; and that the trade in view of all the circumstances was an advantageous transaction for plaintiffs.

"That defendant Randall, in all matters connected with said employment, acted in good faith, with reasonable skill, and without intending to deceive or defraud the plaintiff in any respect whatever; that whatever advice was given by him to plaintiffs, and whatever statements were made by him respecting the value of the lands involved in the trade, were honestly given and made according to his best judgment and honest belief as to the same."

[3] These findings are not only based upon conflicting testimony of plaintiff and defendant, and therefore, unless contrary to the clear preponderance of the evidence, should not be disturbed by this court, but, in our opinion, are fully warranted by the evidence. In support of their contention, that said Randall concealed from plaintiffs certain facts tending to show that the De Witt land was not worth as much as plaintiffs paid for it, they showed by the testimony of one Bennett, that he had a conversation with

Randall and De Witt, while Randall and plaintiff were in Sanborn county, in which conversation the witness Bennett said that he would not say that a certain quarter section of the De Witt land then under discussion was worth $75 per acre, to which the defendant Randall replied that he would dislike to have anything said to plaintiff to the effect that said land was worth less than $75 per acre. This would tend to indicate bad faith on the part of Randall, and, had plaintiffs been depending wholly upon him for information relative to the value of the De Witt land, we might reach a different conclusion; but, from all the evidence and the circumstances surrounding the case, it is clear that plaintiffs relied upon their own judgment and inquiries made by them in arriving at what was a reasonable value of the De Witt land.

[4] It is next contended by plaintiffs that the compensation received by Randall was so great in proportion to the services rendered as to be unconscionable. With this contention we fully agree, but that does not necessarily vitiate the transaction. If plaintiffs considered, as they evidently did, that they were making a large enough profit on their own land to justify them in paying the defendant what they agreed to pay him to bring about the trade, they cannot now, after having reaped the benefit of the transaction, be heard to complain that defendant was unconscionable in exacting a high price for his services.

The judgment and order appealed from are affirmed.

. WHITING, P. J. (dissenting). I am unable to concur in the foregoing decision. This action was brought by principles to recover certain money which they had paid to their agent as part compensation for such agent's services, and to have canceled a note given to such agent as further compensation for such services. Their claim is that, after the payment had been made and the note given, they learned that their agent had been unfaithful to the trust imposed in him. This action is in no sense one to recover damages resulting from the breach of such trust, though its rulings upon evidence and its findings disclose that the trial court permitted the cause to be tried exactly as though it were such an action. It needs no citation of authorities to sustain the proposition that an agent is entitled to compensation for services performed in the honest discharge of his trust, and this regardless of whether or not his services have resulted in profit to his prin-

cipal. Likewise it needs no citation of authorities to sustain the proposition that no agent is entitled to compensation where he has been unfaithful to his trust, even though, out of the transaction in which he was engaged, profit may have come to his principal. The trial court, as evidenced by the findings quoted by my colleagues, seems to have been of the opinion (in which opinion my colleagues seem to concur) that the fact that the principals relied in part upon information other than that received from their agent, and, so relying, acted in part, at least, upon their own judgment, affects their right of recovery. In such a monstrous proposition I cannot concur. Carried to its logical result, it would mean that, no matter how unfaithful he was to his trust, an agent would be entitled to compensation whenever his principal acted, relying in part, or even in whole, upon inofrmation gained from other sources. That the erroneous theory upon which thie cause was tried is still maintained by respondent's is evidenced by their brief. They say:

"Can there by any doubt, in the face of the above evidence, that Stanton went there to personally examine and investigate the De Witt lands, and did not rely or intend to rely on anybody's judgment except his own?"

"Assuming for sake of argument that, as appellants contend, Randall in this case practiced fraud on appellants, yet under the above testimony no court or person could say that the plaintiff relied upon it."

"Appellants charge fraud, and seek to recover money claimed to have been obtained from them by such fraud. Such evidence of the actual value of appellants' land is very material in tending to show that there is actual gain to them instead of loss."

I am not unmindful of the fact that among the findings of the trial court there are certain ones which, if standing alone, would support such court's conclusion and judgment. But when a cause has been tried upon an entirely wrong theory under which a large amount of immaterial, irrelevant, and incompetent evidence has been improperly received and immaterial facts treated as of controlling importance by the trial court, a new trial should be had to the end that due weight be given to that which is material, and the immaterial rejected.